Richard H. Rosenberg
Attorney at Law
217 Broadway
Suite 707
New York, New York 10007
Tel: 212-586-3838
Fax: 212-962-5037

August 5, 2008

Hon. Alvin K. Hellerstein
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

**Re: United States v. Antonia Beatreiz Polo
S3 07 CR 753 (AKH)**

Dear Judge Hellerstein:

Please accept this letter and the annexed exhibits as defendant Antonia Beatreiz Polo's sentencing memorandum. Ms. Polo is scheduled to be sentenced on August 15, 2008. On April 28, 2008 Ms. Polo pleaded guilty to a superceding information charging her with Misprison of a felony in violation of 18 U.S. C. § 4 ("Misprison") pursuant to a plea agreement with the government.

While the sentencing guidelines are now advisory post United States v. Booker, 125 S. Ct. 738 (2005) and are but one of five factors to be considered in determining a sentence, district courts are nevertheless directed to determine the applicable guidelines range and consider it along with all the factors listed in 18 U.S.C. § 3553 (a). United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Accordingly, the first part of this memorandum will address the guideline issues raised in the pre-sentence report, as well as comments and corrections to the report.

**Objections and Comments to the Pre-sentence Report:**

¶ 52: The defendant is not, and has never been a user of narcotic substances. Her positive test for the presence of heroin in her system on the day of her arrest resulted from inadvertent breathing of such a substance. The apartment served as a heroin "mill". Reportedly, the odor of the substances that were being packaged was strong, suggesting that the occupants were exposed to loose narcotic powder. Notably, the defendant has not tested positive for illicit substances since her arrest.

§ 56: Since the issuance of the pre-sentence report the defendant has provided pay stubs as proof of her employment as well as a financial statement of monthly cash flow.

**Post-Booker Sentencing Considerations**

As this court is well aware, while the sentencing guidelines provide a sentencing court with a "starting point and the initial benchmark", Gall v. United States, 128 S. Ct. 586 (2007), a sentencing court must now consider all of the 18 U.S.C. § 3553 (a) factors, not just the guidelines, in determining a sentence that is minimally sufficient to meet the goals of sentencing set forth in 18 U.S.C. § 3553 (a) (2): justice, deterrence, incapacitation and rehabilitation. United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

The requirement that a court impose a "sufficient, but not greater than necessary" sentence to achieve those goals sets a limit on the sentence that a court may impose. Further, in determining whether and to what extent imprisonment is appropriate based on § 3553 (a) factors, the court is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (a).

An examination of the defendant in relation to the factors delineated in § 3553(a) suggests that a non-prison sentence in this case is sufficient to meet the sentencing goals of the statute.

**The Defendant's Background, Character and Circumstances of the Offense**

Under 18 U.S.C.§ 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing and appropriate sentence."

An examination of Ms. Polo's background supports the supposition that Ms. Polo's association with and presence at an apartment where narcotics were stored and packaged is not reflective of her background, true values and previous commitment to law abidance.

Ms. Polo is only 23 years of age. This case represents her only encounter with any criminal justice system. She is a legal resident who had previously lived in New York with her parents during her elementary school years. At age 12, her father relocated her back to the Dominican Republic because he wanted her to continue her education there. She completed high school and after

2

graduation, attended college. Ms. Polo also studied to become a beautician in the Dominican Republic. She returned to the New York in February 2007, only a few months before her arrest. Her plan was to return to school and find employment here, while at the same time renewing her green card. She resided with her grandparents, her brother and her sisters and took an off the books job at a beauty salon. Her association with the apartment mill was brief. It began sometime in March and she estimates that she was in the apartment approximately ten times. Her presence at the mill was sporadic and not indicative of a lifestyle devoted to the universe of drug traffickers.

Indeed, Ms. Polo's association with the heroin mill resulted from her relationship with other persons associated with this case. She had no proprietary interest in any of the narcotics in the apartment and was not engaged in the sale or distribution of any narcotic substance. Her participation in the instant offense has generated a deep and an ever present sense of remorse and shame and worry.

Since her release on bail Ms. Polo she has been steadily employed at a women's clothing store on 34th Street in Manhattan. Her excellent job performance has earned her a promotion and raise. Up until very recently a condition of her bail required home detention other than for work, court and professional appointments. Her unwavering abidance to the rules and conditions of her release led the probation department to request, and this court granting, a termination of the restrictive portions of her bail release.

In short, Ms. Polos's simple but entirely law abiding existence both before this offense and subsequent to her release on bail demonstrates her ability to assimilate as a productive and lawful member of society. Her universe consists of her job and her close knit family, who provide her emotional comfort and support in this time of stress and anxiety over the outcome of this sentencing proceeding..

**The need for the sentence imposed to promote statutory objectives:**

The statute directs the court, in determining sentence to consider the need for the sentence to promote respect for the law, provide just punishment, afford adequate deterrence to further criminal conduct and protect the public from further crimes of the defendant.

At the outset the court is respectfully asked to consider that young Ms. Polo, with no criminal history, a strong family presence, a positive adjustment to pre-trial supervision, and a solid employment history since last August, presents no danger to the society. The felony conviction suffered as a consequence of her participation in criminal activity will have collateral consequences for years to come. She will be always marked as a convicted felon. Her United States residency and the hope for citizenship may have been irrevocably damaged by this conviction. Moreover, Ms. Polo may now face removal proceedings as a result of this conviction. To a person who had hoped to gain citizenship and make the United States home, such a loss of privilege is great punishment.

**The Kinds of Sentences Available:**

Since the guidelines are advisory, the restrictions on probationary sentences, sentences of home confinement, and split sentences found in the guidelines are also advisory. Indeed, by statute the defendant is eligible for a probationary sentence. Here, it is respectfully urged that in determining a sentence that is both reasonable and sufficient to achieve the goals of sentencing, the court consider the aforementioned background and character of the defendant, her positive adjustment to supervision and her limited offense conduct as a basis for the imposition of a non-jail sentence under 18 U.S.C. 3553(a).

**The Guideline sentence range**

The defendant entered her plea to the superceding information pursuant to a plea agreement. That agreement estimated the applicable guideline offense level at level 16, criminal history category I, and a sentence guideline range after adjustment for acceptance of responsibility of 21 to 27 months imprisonment. The PSR guideline calculation is identical.

The defendant's plea agreement provides a stipulation that the aforementioned sentence range would constitute a reasonable sentence pursuant to the § 3553 (a) factors but leaves the defendant free to argue for a non-guideline sentence. As noted in the prior sections of this submission, we do just that and suggest to the court that a sentence outside the guidelines under the facts and circumstances present, is also reasonable and serves the interests of justice. This court has presided over this case for almost one year and has had the opportunity to appreciate the significant differences in degrees of culpability among the defendants. Even among the defendants who pleaded to superceding informations charging misprison, Antonia Polo is perhaps the least culpable. Her association with the mill was brief and aberrational to an otherwise law abiding life..

For all the reasons previously set forth regarding Ms. Polo's background and character, the nature of her offense, and her demonstrated ability to regain her footing on a lawful path of gainful employment and dedication to family point to the reasonableness of a sentence of probation. It is respectfully submitted that a sentence of probation in this case is sufficient to serve the goals of sentencing with the added attribute of demonstrating compassion and mercy.

Respectfully submitted,

Richard H. Rosenberg
RR0846

To: AUSA Marshall Camp
    Ross Kapitansky, U.S. Probation